■Reese, J.,
delivered the opinion of the court.
In March, 1835, Joseph H. Bryan, the complainant’s testator, then of the State of North Carolina, entered into a mercantile co-partnership with his nephew, Henry H. Bryan, furnishing to the firm all the money capital; the latter, at the time, resided in Clarksville, where the firm was to do business. The style of the firm was H. H. Bryan & Co. A few weeks after the establishment of the co-partnership, Joseph H. Bryan removed to Clarksville, and resided there for about six months, when he removed to Nashville, and shortly afterwards to the Western District, Fayette county; and after he left Clarksville he never returned there again. In August, 1837, Henry H. Bryan went to the Western District and dissolved the partner *117 ship with said Joseph H. Bryan, andón the 5th of September, 1837, formed a new partnership with his brother, Jesse A. Bryan, under the same style of H. H. Bryan & Co. There was no newspaper publication of this dissolution, or of the formation of this new partnership. The new partners gave their note to Joseph H. Bryan for upwards of six thousand dollars for his capital and supposed profit. On the 5th of February, 1838, a new firm was entered into between H. H. Bryan, Jesse A. Bryan and James C. Johnson, under the style of Bryan, Johnson & Co., and a publication was made in the Clarksville Chronicle, of the formation of this firm. This continued to exist and do business at the old stand for three months, when a dissolution took place. Of this dissolution a publication was made in the same newspaper, and also that business would be continued by H. H. Bryan & Co. This last firm consisted of H. H. & J. A. Bryan, and continued until the 8th July, 1838, when they sold their stock of goods to a third person. Of the formation and of the dissolution of these two last partnerships, Joseph H. Bryan had no knowledge. Mr. Johnson, the partner in one of the firms, says that he had no contract with, and knew nothing of Joseph H. Bryan.
Joseph H. Bryan, in August 1838, was found by inquisition to be, and to have been for several months past, lunatic and of unsound mind; and a committee or guardian was appointed to take charge of his property. On the 2d July, 1838, Henry H. Bryan borrowed of one Upton Organ, the sum of one thousand dollars, and gave his note therefor in the firm name of H. H. Bryan & Co., and the defendant, by his signature and seal on the face of said note,became surety of said H. H. Bryan & Co., without, however, the fact of such suretyship appearing upon said instrument. Upton Organ sued H. H. Bryan and the defendant Turner, and them only, upon said instrument, and obtained a judgment for debt and interest in May 1840. At the September term, following, in the same court, the Circuit Court for the county of Montgomery, defendant Turner moved for and obtained judgment against the complainant, as the administrator of Joseph H. Bryan, dec’d, and against Henry H. Bryan and Jesse A. Bryan, without notice, not upon the 1st section *118 of the the act of 1801, ch. 10, as being surety, and as having paid such judgment, but upon the 1st section of the act of 1809, ch. 69, as being a surety, and having had a judgment rendered against him, after having the fact of suretyship found by a jury, agreeably to the statute. This judgment was for the amount of the other judgment, interest and costs.
This bill is filed to enjoin the last named judgment, upon the ground, that the relation of principal and surety, did not exist between the complainant’s testator and the defendant. The bill alledges that the defendant was the nephew of Joseph H. Bryan, and the cousin of H. H. Bryan, was on intimate and confidential footing with the latter, and knew, or was informed of the. dissolution of the first firm, and knew of the mental incapacity of Joseph H. Bryan, at the .time the note was made.
The answer states, that there was no publication of the dissolution; and states further, not that defendant had no knowledge of the dissolution, but that he does not recollect whether he was informed of it. And the defendant relies upon his judgment at law being conclusive; and that complainant has an unembarrassed and adequate remedy at law, and, therefore, no remedy in equity. The proof is, that at the time of the dissolution of the first firm,.and the formation and dissolution of the other firms, the defendant lived in the town of Clarksville; that H. H. Bryan and other members of his family boarded with him during all that time, and one of the clerks for some time; that he was a relation, confidential friend, and professional counsel of the said H. H. Bryan and of the firm; that he habitually took the newspaper, in which the formation and dissolution of the partnership of Johnson with the Bryans was published. That on all the, changes of the firms, inventories were made out, which took much time, during which the front doors of the store house were closed. When to all this it is added, that the defendant does not deny knowledge of the dissolution, nor, of the existence of facts from which he ought to have inferred it, but only his recollections of having been informed of it. We are satisfied that, when defendant executed the note, not only that Joseph H. Bryan was not in fact a partner, but that, from all the facts shown, the defendant has no right to holditim *119 to the liability of a partner- Defendant must have known that Johnson was brought into the firm, and ho must have known, from the distance, absence, and mental condition of his uncle Joseph H. Bryan, that he made no contract, had no agency or even knowledge that he was brought in; and that would have dissolved the first firm, if it had then existed. There are other facts from which, we think, he could not but have inferred the same thing.
The only remaining question is as to the effect of the judgment at law, and is there a remedy in equity? Thejudgmentatlaw in this cause is not a summary remedy given by statute, as a substitute for a common law action, as in the case where the surety has paid the debt, provided for by the act of 1801, ch. 15, or in the case of summary judgments against sheriffs, constables, &c., and sureties, when debt or covenant would be brought at common law; but this judgment, by motion, in relation to the basis on which it rests, the mere rendition of a judgment against a surety, is an isolated and anomalous remedy, existing no where else, that we are aware of: it is a sort of substitute for the equitable remedy which the security has by bill quia timet against the principal debtor and the creditor, to compel, for his indemnity, the former to pay the latter. But the remedy is a very crude one, and if much enforced, bills of equity will have to spring up around it, on every hand. If the action at law, resulting in a judgment against the surety, were likewise brought against the principal, by the creditor of both, then the liability and indebtedness of the principal would be judically ascertained, and the case so far simplified; and that may have been the state of things in the contemplation of the legislature of 1809, when this particular and dangerous remedy was given. But, even in that case, whatis the situation of the plaintiff in this summary judgment? it is a mere judgment for his indemnity, he is not beneficially interested, as owner of it, to the amount of one dollar, until he has paid that dollar. The very judgment constitutes him a trustee for the creditor, for the principal, for all parties.
This summary judgment for indemnity is liable to much abuse; the surety against whom the judgment has been render *120 ed, and with regard to which he is tobe indemnified by a judgment over, may be insolvent, and therefore in no danger from judgment against him, and if he collect on bis judgment the principal may be compelled to pay twice. But if the liability and indebtedness of the supposed principal have hot been judicially ascertained by a suit of the creditor against him, before the surety obtains his judgment by motion, shall he not be permitted in chancery, or somewhere, to show, by way of throwing off the burthen of the surety’s judgment, that he is not liable,is notindebtéd, has paid or has a Set off? So far, therefore, is this peculiar judgment of indemnity, w'hich constitutes the plaintiff in it a trustee, from closing the equitable forum, that, itself makes and calls into exercise chancery jurisdiction, in order to limit and restrain its operation and prevent it from doing mischief. In the case before us, the name, even, of Joseph H. Bryan was not upon the paper, or expressed in the firm signature; he was not a partner, therefore not contracted with, by either Organ or Turner. Organ did not sue him atlaw, and ascertain his liability and indebtedness. But he sued H. H. Bryan and Turner only; and bn the foot of such judgment ^merely, Turner obtains, on motion, his judgment of indemnity against the complainant, H. H. Bryan, and Jesse A. Bryan, as principals, persons never associated in the same firm. Shall a judgment of this nature, a judgment of indemnity, and thus obtained, exclude the complainant from setting it aside in equity, by showing the entire transaction set forth in the record before usi
We do not wish to limit or question the remedy of writ of error, coram nobis, as-far as it has been adopted and applied in this State; nor do we hold, that the bill of equity is a concurrent remedy with it, in those cases. But we hold, that in the case of such a judgment as this, as we have described it, upon its grounds and its facts, the equitable jurisdiction is free from doubt, although it may be possible,.that the writ of error coram nobis might have availed to revoke the judgment; yet, in this case, that remedy is not free, unembarrassed and adequte.
Let the decree of the Chancellor be reversed, and the judgment atlaw of defendant be perpetually enjoined.